UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 10-74-HRW

RAYMONT BOLANDER,                                                              PLAINTIFF,

v.                        **MEMORANDUM OPINION AND ORDER**

MARK JORDAN, *et al.,*                                                              DEFENDANTS.

    This matter is before the Defendants' Motion for Summary Judgment [Docket No. 18]. The motion has been fully briefed by the parties. For the reasons set forth herein, the Court finds that issues of material fact preclude summary judgment as to Plaintiff's claims for use of excessive force. Defendants are entitled to judgment as a matter of law with regard to Plaintiff's claims for improper training and unlawful imprisonment.

    This is an action brought by Plaintiff, Raymont Bolander, pursuant to 42 U.S.C. §1983, against Mark Jordan, a Vanceburg, Kentucky police detective, Joseph Billman, the Vanceburg, Kentucky, Chief of Police, the Vanceburg Police Department, and the City of Vanceburg, Kentucky, in which Bolander alleges that his constitutional rights were violated by the Defendants with regard to an incident that ultimately resulted in his arrest and conviction for terroristic threatening and disorderly conduct.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

The record establishes a long running dispute between Plaintiff's daughters and Defendant Jordan. In 2008, Plaintiff's daughters and others apparently bullied Jordan's daughter. Jordan confronted one of the daughters, Hannah. Jordan and Bolander tell two drastically different versions of this incident. At the time of the incident, Bolander was deployed by the National Guard in Afghanistan. The events giving rise to this civil action occurred shortly after Bolander returned home in May 2009.

Shortly after his return, Bolander went to the residence of Rafe Gibson believing that it was the residence of Detective Jordan.

Bolander was informed that he was at the wrong residence and that Detective Jordan lived one street over. Bolander then informed Rafe Gibson that Jordan "has an ass whipping coming."

Bolander then proceeded to Detective Jordan's home, however, he was not there at the time. Rafe Gibson later told Jordan of Bolander's comments.

Subsequently, on July 28, 2009, Detective Jordan was eating lunch at the McDonald's located inside the Bee Mart complex when Bolander entered the McDonald's restaurant with his wife and seven year-old son. Bolander was not

2

actively seeking Jordan at that time but, rather, happened upon him at the Bee Mart.

Bolander proceeded to the table where Detective Jordan was seated with the intent to confront Detective Jordan about the incident in which Detective Jordan approached Bolander's daughter in 2008.

While Detective Jordan was seated eating his meal, Bolander, by his own admission, placed both of his hands on the table, bent over into Detective Jordan's face, and made a statement concerning his intention to "tear his head off" and/or "if he ever did that again I'd take his fucking head off."

Detective Jordan told Bolander that this was not the time or place for that type of conversation. However, Bolander continued to use foul language and act aggressively
towards Detective Jordan and refused to back out of Detective Jordan's personal space when asked to do so.

Bolander testified that Jordan, too, used profanity in addressing him.

Bolander stated that Jordan screamed at him "you're going to go to jail!" Detective Jordan then got up and walked out of the McDonald's area and up to the front counter of the Bee Mart and used his cell phone to call for back up.

Bolander was observed shortly thereafter approaching

Detective Jordan and getting within inches of the officer's face in an aggressive and threatening manner.

Kayla Goodwin, the cashier, testified that she saw Bolander yelling at Detective Jordan and that he was yelling loudly, cursing, and threatening him. Specifically, she heard Bolander threaten to take Detective Jordan out and "beat his fucking head into the blacktop." She stated that Detective Jordan remained calm, pulled out his cell phone, and walked over to the cash register area. She testified that she dialed the manager, Christa Baldwin on her cell phone to ask for help.

Ms. Baldwin came to cash register area. She testified that Bolander continued to direct profanity towards Detective Jordan and that she called 911.

Bolander's wife injected herself between Bolander and Detective Jordan inside the Bee Mart and placed her hand against Bolander's chest, apparently attempting to restrain her husband. Despite these requests, Bolander continued to threaten and act aggressively towards Detective Jordan.

Chief Billman arrived in response to Jordan's call for back-up. As he arrived, Detective Jordan began walking towards the exit. Various witnesses, including Jordan and Kayla Goodwin, testified to seeing Bolander throw an elbow into Jordan as they exited the Bee Mart complex.

4

Bolander admitted that he made physical contact with Detective Jordan as he pushed through the exit doors at the same time as Detective Jordan with his right elbow raised in the direction of Detective Jordan to clear Jordan out of Bolander's way.

Bolander was then escorted by Detective Jordan and Chief Billman to Chief Billman's cruiser where they attempted to handcuff Bolander behind his back.

After one wrist was cuffed, Bolander continued to act aggressively towards the officers and admitted he resisted having his other hand cuffed behind his back when commanded to do so.

Bolander testified that he attempted to explain to the officers that he could not be handcuffed behind his back because of pre-existing injuries and that he was not resisting arrest. Bolander testified that he even turned to face Billman and held out his hands to be handcuffed from the front.
He testified that Jordan responded, "I don't give a shit."

Jordan contradicts this testimony by stating he remained non-combative.

Several witnesses testified that Bolander resisted the officers' attempts to take him into custody without any mention of preexisting injury or his desire to be handcuffed in the front of his body.

Chief Billman testified that he directed Detective Jordan to retrieve his

5

Taser from his vehicle, which was parked close by. Detective Jordan testified that he twice warned Bolander that he would Taser him if he did not submit to being handcuffed before fully utilizing the Taser to subdue Bolander.

Chief Billman testified that he ordered Jordan to Taser Bolander and after Detective Jordan's warning, Bolander stated, "[t]ase me, mother-fucker."

Bolander testified that Detective Jordan was approximately six (6) to seven (7) feet away from Bolander when he then discharged his Taser.

After the use of the Taser, Chief Billman helped lower Bolander to the ground and Bolander then submitted to being handcuffed with his hands behind his back and was subsequently placed in Chief Billman's cruiser for transport to the jail without further incident.

As a result of this incident, Bolander was charged with terroristic threatening, disorderly conduct, and resisting arrest. He was tried in the Lewis County District Court on these charges on March 8, 2011. After a two-day jury trial, Bolander was found guilty of terroristic threatening and disorderly conduct, but was acquitted on the resisting arrest charge.

In July of 2010, Plaintiff filed this civil action against Detective Jordan, Chief Billman, the Vanceburg Police Department and the City of Vanceburg for violation of his constitutional rights. Specifically, Plaintiff alleges that the use of

6

the taser was an excessive use of force and that Detective Jordan was not properly trained in the use of the taser. He also alleges a claim for unlawful imprisonment.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure the Court must view the evidence in the light most favorable to the nonmoving party, in this case, the Plaintiff. Thus, when examining the record the Court will resolve doubts and construe inferences in favor of the Plaintiff in an effort to determine if any genuine issues of material fact exist.

## III. ANALYSIS

Defendants Jordan and Billman assert that they are entitled to summary judgment dismissing all excessive force claims brought against them on the basis of qualified immunity.

Qualified immunity shields public officials who perform discretionary functions from the necessity of defending against tort liability so long as their conduct does not violate clearly established rights of which a reasonable official would have known. *See Fisher v. Harden*, 398 F.3d 837, 842 (6th Cir.), cert. denied, 546 U.S. 1075 (2005).

The right to be free from excessive force during an arrest or investigative stop is secured by the Fourth Amendment's prohibition against

7

unreasonable seizure. *Graham vs. Connor*, 490 U.S. 386 (1989). Such determinations are analyzed under an objective reasonableness standard. The reasonableness of the officers actions should be judged from the officer's perspective and the Court should pay particular attention to the facts and circumstances of each case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others and whether he is actively resisting arrest or attempting to evade custody by flight.

The record establishes two very differing accounts of hat transpired in the Bee Mart and in the parking lot. This issue of whether the use of the taser was excessive presents a classic he said - he said scenario, replete with issues of fact. As such, summary judgment is inappropriate.

As for Plaintiff's claims for failure to train and unlawful imprisonment, neither survive summary judgment. Indeed, Plaintiff appears to have abandoned these claims by failing to argue in support of them in his response to Defendants' dispositive motion.

## IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 18] be **OVERRULED** in part and **SUSTAINED** in part.

This 17th day of January, 2012.

